The court took time to consider, and at its present sitting delivered its decree as follows:
“ All that wc conceive necessary tó be done at present with respect to Mrs. Howley is, to refer the matter to the master, to enquire what part of the testator’s estate came into her hands, how the same has been disposed of, and what part thereof is now in her possession or power, and to report accordingly.
The next defendant Baker, having suffered the hill to he taken pro confesso as against him, the law clearly points out in what manner he is to be proceeded against.
The defendant Milligan having positively denied all the charges in the hill against him, we shall proceed to the last defendants, Burke and Parker, who will more im - mediately attract our attention in considering that part of the bill which relates to. the note of hand in question. On this head the primary and most essential subjects of consideration arc, whether the certificates given for this note were the property of the estate of Richard Howley; and next, whether they were fairly sold for a valuable *169 consideration. The hill charges, that the certificates were the property of the estate of Howley, and that the transactions respecting them, between Mrs. Howley and Burke, and the note said to be given as a valuable consideration for them, were founded in fraud. And Burke, one. of the principal actors in the business, having suffered the bill to be taken pro confess» against him, has tacitly acknowledged the charges in the bill. Tire question then is, whether, and how far, the fraud in this case, will affect the note in Parker’s hands, who solemnly avers himself to have been a fair and bona fide purchaser, for a valuable consideration, without notice of the fraud, or any determination of this court in consequence thereof. This is a question of the. highest importance, and for that reason we have taken unusual time to consider it. On this court the security of property in the hands of exccu tors and administrators materially depends, and if a strict guard is not kept over their conduct, it would be \ cry easy for them to waste an estate of whatever value, in the most fraudulent manner, to the great injury of creditors and legatees. That an executor has a right to dispose of the property of the testator for the payment of debts, is unquestionable. If then the creditors of an estate should see the property of the testator, their debtor, frequently disposed of, and no part of the proceeds applied to the ex-tinguishment of their claims, and, from an apprehension of some fraudulent conduct in the executors, should thereupon institute a suit in this court, to oblige them to account, and pending such suit, the executors should still continue to find purchasers for, and to dispose of, the property of the estate, regardless of the claims of its creditors, and no remedy could be applied to the evil, the consequence would be, that both the estate and creditors might be ruined, and the superintending powers of this court, over the conduct of executors, be rendered entirely nugatory. How far the lis pendens alone might he deemed sufficient notice, is a question not necessary for as at present to determine; for in. this case, there are much stronger grounds of notice, as there had been decrees against several of the defendants, and in particular *170 against Burke, before tbo purchase of the note by Parker. Can it ever be admitted then, that after such decree, ("and which at present must be considered as final against Burke,) that a purchaser is not to be charged with notice? This is a doctrine too absurd to require a serious refutation. Jt is well known that decrees of this court are equally binding with judgments at law, and it is a maxim, that ignorance of the law excuses no man. Therefore Parker’s setting up a want of knowledge of the frandulency of the note, cannot avail him against a solemn decree of this court. The case of Simpson and Fen-wick has been quoted as a case in point, and we think it is.
“ With regard therefore to the decree beiug sufficient notice, we think the cases are parallel, and a fortioi’i in this case, Simpson being a stranger and out of this state at the time the decree was passed, and if the decree in that case was deemed sufficient notice, so must it be in this.*
*171 “ This question then arises, how far the original fraud will attach itself to the transaction, so as to render all subsequent dealings relative to the subject of the fraud, equally fraudulent. We have met with a case in 2d Vecey, 516, How vs. Weldon and Edwards, which we think contains strong features of the principal case on this point.” — [The court then proceeded to examine that case minutely, and to apply it to the one under consideration, declaring it to he conclusive.]
“ We have said the decree vs. Burke must be considered as final, and carry with it all the force of a judgment at law. It may be necessary here to explain our reasons for this opinion, that no doubt might he left on the matter. It is true, the act for establishing this court allows the party against whom a bill is taken pro confes-uo, lour years to come in and answer, if without the limits of the United States — as is the case at present with Burke: But until he does come in and answer, the decree must be considered as final, and carried into execution? for we must consider this case upon the same principles *172 as in the case of a bill of review or rehearing. In neither of these cases is the decree appealed from ever suspended, even after the motion is granted; much less then can it be suspended in this case, from the mere contingency of Burke’s coming in at some future day and answering the bill. If that should be the case, the cause will be then again opened, and he might avail himself of any equity he might have, in the same manner that a person could do on assigning error in a bill of review. So at law — in case of a motion for arrest of judgment being allowed, the party in whose favour the judgment is, is not depiived of the benefits thereof till a final hearing and decision on such motion but can in the mean time avail himself of all the benefits derived to him from it. On the whole, we are of opinion, and it is decreed, that the defendant Sarah Howley do account before the master for such part of the estate of Richard Howley as came to her hands, or was in her power as his executrix, — how the same has been applied, — 'and what part thereof remains in her possession or power, and that he report accordingly: That the judgment confessed by Sarah Howley to John Baker be considered as fraudulent, and null and void: That the purchase of the certificates, said to be made by H. M, Burke to S. Howley be deemed fraudulent, and the note obtained by him from Jacob Reid for the sale thereof, be considered as the property of the estate of Richard How-ley, and that Barker, the present holder thereof, be ordered to deliver up the same to the complainant, he indemnifying Barker for what shall appear to have been bona fide paid by him for it, to be ascertained by the master: That Corbett do pay his own costs in this suit, and the remainder be paid out of the estate of Richard Howley.”
Decree of the 'court.
JULY 1791.
*. b. p. 298.
Afterwards the master reported, that the considera-given by George Barker for the note of hand in question, was 1901. on the 1st May, 1788, which with in-£eres|, August, 1791, amounted to 2331. 4s. OdL which report was confirmed.

 The doctrine of lis pendens is of great importance, and the neg. lect of it is frequently of great prejudice to purchasers. The lis pen. dens is, of itself, notice to a purchaser; and will set aside his purchase, though he gave valuable consideration, and had no actual notice. Even lord chancellor King, who was one of the strictest common law lawyers that ever sat on the chancery bench, states this to be the doctrine to prevent the justice of the court being evaded; and is founded on sound reasons; analogous to the real action at common law, where, if the defendant aliens after the pendency of the writ, the judgment in the real action shall oven each such alienation. But lord chancellor King said, the rule though a necessary one, worked so much hardship on a fair purchaser for valuable consideration, without actual notice, that in such a case, if there was any defect of proof, he would not help the party by letting in new proof after publication — Nor would he give leave to amend. See Sorrell vs. Carpenter, 2 P. Wms. p. 482, 483.
The controversy in court respecting a will is lis pendens, and the jjranlee of the heir, or of the devisee, would be bound. See Garth vs. Ward, 2 Atk. 174.
And this doctrine of notice is carried so far, that if a man gets notice of an equitable lien or incumbrance on the estate, after his purchase and after paying part, and after bond given, it is sufficient notice, and he ought not to go on. Tourville vs. Nash, 3 P. Wms. 307. Or if he has notice after payment of the money, but before the execution of the titles. Wigg vs. Wigg, 1 Atk. 382, 384.
The lis pendens, after the bill is filed, commences from the service of the subpoena. But the question must relate to the estate, and not» *171 merely to collateral matter, such as money secured on it. Worsley vs. Earl of Scarborough. 3 Atk. 392. And a bill to perpetuate testimony of witnesses, is a sufficient lis pendens. Garth vs Ward, 2 Atk. 174.
In the case of Sorrell vs. Carpenter, (3 P. Wms. 482, 483,) lord chancellor King says, “ though this court will oblige all to take notice of its decrees, as much as of judgments, yet there does not seem to be the same reason for obliging people to take notice of the filing of a bill. But lord chancellor Hardwick, a few years later, (1746,) said, “ that there is no such doctrine in this court, that a decree made here shall be an implied notice to a purchaser, after the cause is ended; but it is the pendency of the suit which creates the notice.”
It is difficult to form an opinion between two such authorities; but it would seem reasonable that if the mere pendency of a suit should be implied notice to all the world that the right was in controversy, that a decree settling tliat right should be a higher notice, to deter ar.d prevent purchasers from buying in opposition to the decree. But where a thing assigned is only a chose in action, though the assignment be without notice, yet as no legal estate passes, the assignment which is prior in time must take place. See latter part of the case of Tourville vs. Nash, 3 P. Wms. 308—See too 1 Schoals and Lefroy, Rep. 152.—See the cases of purchasers without notice, collected in Fonbl. 2d b. ch. 6, § 2, p. 151. Sugden, I,aw of Vendors 119, 476, 479, 488. Cooper’s Justinian, in the notes, p. 473